**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.

APPLE CORPS LIMITED AND SUBAFILMS
LIMITED,

                Plaintiffs,

vs.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

                Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, Apple Corps Limited and Subafilms Limited ("Plaintiffs") hereby sue Defendants, the Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A" (collectively "Defendants"). Defendants are promoting, selling, offering for sale and distributing goods bearing counterfeits and confusingly similar imitations of Plaintiffs' respective trademarks within this district through a fully interactive commercial Internet website and various Internet based e-commerce stores operating under their domain name or seller identities set forth on Schedule "A" (the "Subject Domain Name and Seller IDs"). In support of their claims, Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1.     This is an action for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), and The All Writs Act, 28 U.S.C. § 1651(a). Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §

1121 and 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.       Defendants are subject to personal jurisdiction in this district, because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this district, through at least, the fully interactive commercial Internet website and Internet based e-commerce stores accessible in Florida and operating under their Subject Domain Name and Seller IDs.

3.       Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens who are engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling, and/or shipping infringing products into this district.

## THE PLAINTIFFS

4.       Plaintiff, Apple Corps Limited ("Apple Corps"), is an incorporated limited company organized under the laws of the United Kingdom with its principal place of business located in London, United Kingdom. Apple Corps is owned by the former members of The Beatles and, where applicable, their successors and its principal activities are the promotion, marketing, and policing of the products and rights of The Beatles, such as merchandising rights and audio and audio-visual content. Apple Corps owns the exclusive right by assignment from The Beatles to all merchandising rights of the Beatles and all other intangible rights in the name "The Beatles."

5.       Plaintiff, Subafilms Limited ("Subafilms"), is an associated company of Apple Corps Limited, with its principal place of business located in London, United Kingdom.  Subafilms is owned by Apple Corps, the former members of The Beatles and, where applicable, their

2

successors. Subafilms' principal asset is the rights in respect of the cartoon film made in 1967 called "Yellow Submarine."

6.      Plaintiffs are engaged in the development, manufacture, promotion, distribution, and sale in interstate commerce, throughout the United States, including within this district, of a variety of quality goods, using multiple common law and federally registered trademarks, including those discussed in Paragraphs 17 and 26 below.

7.      Plaintiffs' trademarked goods are advertised, offered for sale, and sold within the State of Florida, including this district. Defendants, through the sale and offer to sell counterfeit and infringing versions of Plaintiffs' respective branded products, are directly, and unfairly, competing with Plaintiffs' economic interests in the State of Florida and causing Plaintiffs harm within this jurisdiction.

8.      Like many other famous trademark owners, Plaintiffs suffer ongoing daily and sustained violations of their respective trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiffs' individual trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce stores.

9.      In order to combat the indivisible harm caused by the combined actions of Defendants, Plaintiffs expend significant resources in connection with trademark enforcement efforts. The exponential growth of counterfeiting over the Internet has created an environment that requires companies, such as Plaintiffs, to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and themselves from the ill effects of confusion and the erosion of the goodwill connected to Plaintiffs' respective brands.

**THE DEFENDANTS**

10.     Defendants are individuals and/or business entities of unknown makeup each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their products from that location. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants purposefully target their business activities toward consumers throughout the United States, including within this district, through the simultaneous operation of, at least, an interactive commercial Internet website under the Subject Domain Name or Internet based e-commerce stores via Internet marketplace websites under the Seller IDs.

11.     Defendants are the past and present controlling forces behind the sale of products bearing and/or using counterfeits and infringements of Plaintiffs' individual trademarks as described herein operating and using at least the Subject Domain Name and Seller IDs.

12.     Defendants directly engage in unfair competition with Plaintiffs by advertising, offering for sale, and selling goods, bearing counterfeits and infringements of one or more of Plaintiffs' individual trademarks to consumers throughout the United States and this district through the fully interactive, commercial Internet website and Internet based e-commerce stores using, at least, the Subject Domain Name and Seller IDs, as well as additional names, domain names, websites, e-commerce stores or seller identification aliases not yet known to Plaintiffs. Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing goods into the State.

4

13.     Defendants have registered, established or purchased, and maintained the Subject Domain Name and Seller IDs. Upon information and belief, Defendants may have engaged in fraudulent conduct with respect to the registration of the Subject Domain Name and Seller IDs by providing false and/or misleading information to the registrar and/or to the Internet based e-commerce platforms where they offer for sale and/or sell, during the registration or maintenance process related to their respective Subject Domain Name and Seller ID. Upon information and belief, some Defendants have registered and/or maintained the Subject Domain Name and some of the Seller IDs for the sole purpose of engaging in illegal counterfeiting activities.

14.     Defendants will likely continue to register or acquire new domain names and seller identification aliases for the purpose of selling and offering for sale goods bearing counterfeit and confusingly similar imitations of one or more of Plaintiffs' trademarks unless preliminarily and permanently enjoined.

15.     Defendants use their Internet-based businesses to infringe the intellectual property rights of Plaintiffs.

16.     Defendants' business names, i.e., the Subject Domain Name and Seller IDs, associated payment accounts, and any other alias domain names and seller identification names used in connection with the sale of counterfeit and infringing goods bearing one or more of Plaintiffs' trademarks are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringing scheme and cause harm to Plaintiffs. Moreover, Defendants are using Plaintiffs' respective famous names and trademarks to drive Internet consumer traffic to their website and e-commerce stores operating under the Subject Domain Name and Seller IDs, thereby increasing the size and value of Plaintiffs' legitimate marketplace at Plaintiffs' expense.

## COMMON FACTUAL ALLEGATIONS

### Apple Corp's Business and Trademark Rights

17.     Apple Corps is the owner of all rights in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "BEATLES Marks"):

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| THE BEATLES | 1,752,120 | February 16, 1993 | IC 014 - Watches.<br><br>IC 018 – Wallets.<br><br>IC 025 - Headwear, sweatshirts, t-shirts, shirts. |
| BEATLES | 4,373,956 | July 30, 2013 | IC 009 - Decorative refrigerator magnets; computer keyboard accessories, namely mouse pads and wrist rests in the form of pads for use with computers; telephone apparatus, namely, telephones; telephone receivers, telephone answering machines, mobile telephones; cases for mobile telephones; cell phone covers; covers for mobile telephones, namely, fitted plastic films known as skins for covering and protecting electronic apparatus in the nature of mobile telephones; straps for mobile telephones; telephone call indicator lights and electro-mechanical shakers for detecting and signaling incoming telephone calls; mechanical and electric egg timers; boxes and cases specially adapted for holding audio cassettes, video cassettes, gramophone records, audio compact discs, audio mini discs, video discs, and interactive compact discs or cd-roms.<br><br>IC 014 - Jewelry boxes not of metal, including ceramic and porcelain jewelry boxes for trinkets; jewelry; horological and chronometric instruments, namely, watches and clocks; watch straps, cuff links, brooches, bracelets, bangles, earrings, pendants, medallions, |

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| | | | trinkets being jewelry, charms being jewelry, rings being jewelry, tie pins, jewelers ornamental tie pins, lapel pins, tie clips, collectible non-monetary coins, ornamental pins; articles of precious metal and their alloys, and articles coated with precious metal and their alloys, namely, belt buckles for clothing, coasters, jewelry boxes, key rings, key chains; hat and shoe ornaments and key fobs all of precious metal; rings being jewelry; ornamental pins; cigarette and cigar cases; precious stones; semi-precious stones; statuettes and figurines of precious metal or precious stone or coated therewith; scale model vehicles, ships or submarines all made from, or coated with precious metal or precious stone.<br><br>IC 016 - Bond, carbon, copy, printing and writing paper; cardboard; printed matter, namely, printed awards, printed award certificates, and reproductions of printed award certificates, and printed emblems and forms; book binding materials, namely, coated paper for use as book binding and book binding cloth; mounted and unmounted photographs; stationery; adhesive tapes for stationery or household purposes; artist materials, namely, paint brushes, artists' sketch pads, drawing and painting papers and charcoal pencils; electric and non-electric typewriters; office requisites, namely, paper shredders and embossers; printed instructional and teaching materials on the subject of music; plastic bubble packs for packaging; printing type; printing blocks; posters; books, namely, educational books on the subject of musical groups, books on the subject of the entertainment industry, books on the subject of modern history, and biographies; address books; song books; business cards; paper gift cards, postcards; printed invitations; greeting cards; calendars; photograph albums; prints, namely, photograph prints and pictorial |

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| | | | prints; paper gift bags; paper gift boxes; note pads, note books; adhesive backed paper for stationery purposes; pens, pencils and crayons; stationery push pins and thumbtacks; diaries; blank checks and blank check books; check book covers; coasters of cardboard or paper. gift tags of paper and cardboard; decorative pencil tip ornaments made from paper, cardboard and paper mache; stickers; decalcomania; ring binders in the nature of document files; folders; personal organizers; covers for books and for personal organizers; paper table cloths; printed sheet music; printed paper publications in the nature of magazines, activity books, and coloring books on the subject matter of musicians, animation, caricatures, cartoons, fiction and motion picture films; books, booklets, pamphlets, printed guides, comic books and magazines on the subject of music, musicians, caricatures, animation, cartoons, fiction and motion picture films; comic books; general feature magazines; children's activity books; scrapbook albums; crossword puzzle books; educational activity books on the subject of music; writing paper; envelopes; small note pads; trading cards; pictures; art prints and framed art prints; framed and unframed pictorial prints, cartoon prints, lithographic prints, color prints, caricature prints, computer generated pictorial prints, and black and white, and color prints featuring hidden or three dimensional images; graphic art etchings; cardboard gift boxes; paper gift wrap; memo pads; stationery paper; book covers; figurines of paper, cardboard or paper mache; party decorations of paper, cardboard or paper mache for Christmas use; kits composed of paper or cardboard for making paper figurines; collectable non-postage commemorative stamps; rubber stamps; protective covers for books and personal organizers for stationery use; |

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| | | | telephone directories; paper desk mats; pen and pencil cases; pen and pencil boxes; pen and pencil holders; drawing rulers; erasers; printed paper embroidery design patterns; sewing patterns for making clothes, knitting patterns. iron-on transfers for decorating textiles; printed wall charts; paperweights, not of precious metal; babies' bibs of paper; bookmarks; passport holders all made from leather or imitation leather; pencil cases, notelets and autograph books; reusable textile lunch bags; reusable plastic shopping bags.<br><br>IC 018 - Goods made from leather or imitation leather, namely, waist pouches for carrying purses and wallets; luggage, carry on traveling bags, clutch bags, trunks, business card cases, rucksacks, backpacks, purses, wallets, key cases, luggage tags; billfolds, leather key fobs, key cases, umbrellas; bags, namely, handbags, shoulder bags, all-purpose sports bags, barrel bags, carry-on flight bags, and duffel bags, suitcases, attaché cases, school bags, satchels, gym bags, beach bags and credit card cases; hand carry overnight cases of metal, plastic or resin; tote bags, including metal totes; textile shopping bags; identity card holders of leather and imitations of leather.<br><br>IC 021 – Drinking vessels, namely, glasses, mugs, jugs, and tankards not of precious metal; bottles, namely, seltzer bottles for use as barware, sport bottles sold empty, and vacuum bottles; insulated bottles, namely, thermal insulated bottles and flasks for beverages.<br><br>IC 024 - Decorative window curtains of wood, reed, bamboo, beads or plastic; household linen; bed linen; bedspreads; table linen; table cloths not of paper; table mats not of paper; textile table napkins; coasters made of table linen or textile; unfitted fabric furniture covers; |

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| | | | bed sheets, pillow cases, duvet covers; towels; face towels; face washing cloths; curtains; wall hanging of textile; cloth banners; cloth bunting; cloth flags; handkerchiefs; cushion covers; pre-cut textiles for making into cushions and cushion covers; traced cloths for embroidery.<br><br>IC 025 - Footwear and headgear, namely, hats and caps; clothing, namely, shirts, polo shirts, T-shirts, sweatshirts; sweatpants; jackets, coats; pullovers; vests; articles of underclothing, namely, underwear; shorts; scarves; silk pocket squares; neck-ties; braces in the nature of suspenders; belts; socks; long-sleeved shirts and long sleeved T-shirts; silk scarves; silk scarves in the shape of squares for wearing over the head or around the neck; pants; fleece tops; thermal tops; jerseys; baseball jerseys; hockey jerseys; sweaters; tank tops; waistcoats; trousers; golf shirts; golf pants; golf shoes; swim wear; beachwear; night gowns; pajamas; dressing gowns; bathrobes; bathing caps; head bands; slippers; beach shoes; sandals; clothing for toddlers, infants and babies, namely, rompers, shortalls, babies' sleep suits; cloth babies' bibs. |

The BEATLES Marks are used in connection with the manufacture and distribution of quality goods in the classes identified above. True and correct copies of the Certificates of Registration for the BEATLES Marks are attached hereto as Composite Exhibit "1."

18.    The BEATLES Marks have been extensively and continuously used in interstate commerce to identify and distinguish a variety of quality goods. The BEATLES Marks have been in use by Apple Corps since long before the Defendants' use of counterfeits of the BEATLES Marks.

19.     The BEATLES Marks are symbols of Apple Corps' quality, reputation and enormous goodwill and have never been abandoned.

20.     The BEATLES Marks are well known and famous.  Apple Corps and its licensees expends substantial resources in developing, advertising, and otherwise promoting the BEATLES Marks. The BEATLES Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

21.     Further, Apple Corps and its licensees extensively use, advertise, and promote the BEATLES Marks in the United States in association with the sale of quality goods. Apple Corps and its licensees have expended significant resources promoting the BEATLES Marks and products bearing and/or using the BEATLES Marks on the Internet, and via its official website, www.thebeatlesstore.com. Apple Corps' prominent use of the BEATLES Marks has further enhanced the BEATLES Marks' recognition and fame with members of the consuming public. In the last few years alone, Apple Corps has experienced substantial sales of its high quality goods.

22.     The worldwide popularity of the Beatles musical compositions, musical recordings, and the enormous sales of goods bearing and/or using the Beatles' name, have resulted in the widespread recognition of the "Beatles" brand. As a result of Apple Corps' use, promotion and advertisement of the Beatles brand, members of the consuming public readily identify merchandise bearing or sold under the BEATLES Marks as being quality merchandise sponsored and approved by Apple Corps.

23.     Accordingly, the BEATLES Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved substantial secondary meaning as identifiers of quality goods.

24.     Apple Corps' has carefully monitored and policed the use of the BEATLES Marks

and has never assigned or licensed the BEATLES Marks to any of the Defendants in this matter.

25.     Genuine goods bearing and/or using the BEATLES Marks are widely legitimately advertised, promoted, and offered for sale by Apple Corps, and its authorized licensees, via the Internet. Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to Apple Corps' overall marketing and consumer education efforts. Thus, Apple Corps expends significant resources on Internet marketing and consumer education which allow Apple Corps and its authorized licensees to fairly and legitimately educate consumers about the value associated with the BEATLES Marks and the goods sold thereunder.

**Subafilms' Trademark Rights**

26.     Subafilms is the owner of all rights in and to the following trademark, which is valid and registered on the Principal Register of the United States Patent and Trademark Office (the "YELLOW SUBMARINE Mark"):

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| YELLOW SUBMARINE | 3,328,170 | November 6, 2007 | IC 009 - Musical sound and video recordings; gramophone records featuring music; audio compact discs featuring music; computer game software; video game software; interactive entertainment software for generating games, puzzles, images, musical entertainment, visual entertainment or movie clips; sunglasses; eyeglass cases; magnets; fridge magnets; mouse pads being accessories for keyboards; telephone apparatus, namely, covers for mobile telephones; straps for mobile telephones; and downloadable sound and video records featuring music, musicians, caricatures, cartoons, animation, movie clips, album art or music memorabilia images |

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| | | | provided over broadcast, communications, satellite and computer networks. IC 025 - Shirts; polo shirts; t-shirts; long-sleeved shirts and long-sleeved t-shirts; sweatshirts; jackets; pullovers; vests; scarves; pocket squares made of silk; neck-ties; hats; caps; sock; thermal tops; jerseys; sweaters; tank tops; pajamas; clothing for toddlers, infants and babies namely, one piece garments for infants and toddlers, sleep suits, t-shirts and long-sleeved t-shirts. |

The YELLOW SUBMARINE Mark is used in connection with the manufacture and distribution of quality goods in the classes also identified above.  A true and correct copy of the Certificate of Registration for the YELLOW SUBMARINE Mark is attached hereto as Composite Exhibit "2."

27.     The YELLOW SUBMARINE Mark has been extensively and continuously used in interstate commerce to identify and distinguish a variety of quality goods. The YELLOW SUBMARINE Mark has been in use by Subafilms since long before the Defendants' use of counterfeits of the YELLOW SUBMARINE Mark.

28.     The YELLOW SUBMARINE Mark is a symbol of Subafilms' quality, reputation and enormous goodwill and has never been abandoned.

29.     The YELLOW SUBMARINE Mark is well known and famous.  Subafilms and its licensees expends significant resources developing, advertising, and otherwise promoting the YELLOW SUBMARINE Mark. The YELLOW SUBMARINE Mark qualifies as a famous mark as that term is used in 15 U.S.C. §1125(c)(1).

30.     Further, Subafilms and its licensees extensively use, advertise, and promote the YELLOW SUBMARINE Mark in the United States in association with the sale of quality goods.

Subafilms and its licensees have expended significant resources promoting the YELLOW SUBMARINE Mark and products bearing and/or using the YELLOW SUBMARINE Mark, on the Internet via the website, www.thebeatlesstore.com. Subafilms' prominent use of the YELLOW SUBMARINE Mark has further enhanced the YELLOW SUBMARINE Mark's recognition and fame with members of the consuming public.

31.     As a result of Subafilms' efforts, members of the consuming public readily identify merchandise bearing or sold under the YELLOW SUBMARINE Mark as being quality merchandise sponsored and approved by Subafilms.

32.     Accordingly, the YELLOW SUBMARINE Mark is among the most widely recognized trademarks in the United States, and the trademark has achieved substantial secondary meaning as an identifier of quality goods.

33.     Subafilms' has carefully monitored and policed the use of the YELLOW SUBMARINE Mark and has never assigned or licensed the YELLOW SUBMARINE Mark to any of the Defendants in this matter.

34.     Genuine goods bearing and/or using the YELLOW SUBMARINE Mark are widely legitimately advertised, promoted, and offered for sale by Subafilms through its authorized licensees via the Internet. Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to Subafilms' overall marketing and consumer education efforts. Thus, Subafilms expends significant resources on Internet marketing and consumer education which allow Subafilms and its authorized licensees to fairly and legitimately educate consumers about the value associated with the YELLOW SUBMARINE Mark and the goods sold thereunder.

**Defendants' Infringing Activities**

35.     Defendants are promoting and advertising, distributing, selling, and/or offering for sale goods in interstate commerce bearing counterfeit and confusingly similar imitations of one or more of the BEATLES Marks and/or YELLOW SUBMARINE Mark (the "Counterfeit Goods") through at least the commercial Internet website or Internet based e-commerce stores operating under the Subject Domain Name and Seller IDs. Several Defendants are also using, at least, the listings and associated images identified by the Amazon Standard Identification Numbers ("ASIN") on Schedule "A" annexed hereto. Specifically, Defendants are using virtually identical copies of one or more of the BEATLES Marks and/or YELLOW SUBMARINE Mark (collectively, "Plaintiffs' Marks") for different quality goods. Plaintiffs have used their respective Marks extensively and continuously before Defendants began offering goods using counterfeit and confusingly similar imitations of Plaintiffs' merchandise.

36.     Defendants' Counterfeit Goods are of a quality substantially and materially different than that of Plaintiffs' respective, genuine goods. Defendants are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for Plaintiffs' genuine quality goods despite Defendants' knowledge that they are without authority to use Plaintiffs' Marks.  The net effect of Defendants' actions is likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale in Defendants' e-commerce stores are genuine goods originating from, associated with, and/or approved by Plaintiffs.

37.     Defendants advertise their Counterfeit Goods for sale to the consuming public via an Internet website operating under the Subject Domain Name and e-commerce stores operating

on, at least, one Internet marketplace website using, at least, the Seller IDs. In so advertising these goods, Defendants improperly and unlawfully use one or more of Plaintiffs' Marks without Plaintiffs' permission.

38.     As part of their overall infringement and counterfeiting scheme, Defendants are, upon information and belief, all employing and benefitting from substantially similar advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of Plaintiffs' Marks. Specifically, Defendants are using counterfeits and infringements of at least one of Plaintiffs' Marks in order to make their e-commerce stores selling illegal goods appear more relevant and attractive to consumers online. By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiffs' respective genuine goods. Defendants are causing individual, concurrent and indivisible harm to Plaintiffs and the consuming public by (i) depriving Plaintiffs and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiffs' genuine goods on the World Wide Web, and (ii) causing an overall degradation of the value of the goodwill associated with Plaintiffs' Marks.

39.     Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States. As a result, Defendants are defrauding Plaintiffs and the consuming public for Defendants' own benefit.

40.     At all times relevant hereto, Defendants in this action had full knowledge of Plaintiffs' respective ownership of Plaintiffs' Marks, including their respective, exclusive rights to use and license such intellectual property and the goodwill associated therewith.

41.     Defendants' use of Plaintiffs' Marks, including the promotion and advertisement,

reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiffs' consent or authorization.

42.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiffs' rights for the purpose of trading on Plaintiffs' goodwill and reputation.  If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed.

43.     Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiffs' respective, genuine goods and Defendants' Counterfeit Goods, which there is not.

44.     Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities connected to their Subject Domain Name and Seller IDs and any other alias domain names, websites, e-commerce stores or seller identification names being used and/or controlled by them.

45.     Further, Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiffs.

46.     Plaintiffs have no adequate remedy at law.

47.     Plaintiffs are suffering irreparable injury and have suffered substantial damages as a result of Defendants' unauthorized and wrongful use of Plaintiffs Marks.  If Defendants'

counterfeiting and infringing, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed.

48.     The harm and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

## COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

49.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 48 above.

50.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of Plaintiffs' Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of the Counterfeit Goods.

51.     Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of one or more of Plaintiffs' Marks.   Defendants are continuously infringing and inducing others to infringe Plaintiffs' Marks by using one or more of them to advertise, promote, sell, and offer to sell counterfeit and infringing goods.

52.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

53.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiffs and are unjustly enriching Defendants with profits at

Plaintiffs' expense.

54.     Defendants' above-described illegal actions constitute counterfeiting and infringement of Plaintiffs' Marks in violation of Plaintiffs' respective rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

55.     Plaintiffs have suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

## COUNT II - FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

56.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 48 above.

57.     Defendants' Counterfeit Goods bearing, using, offered for sale and sold using copies of one or more of Plaintiffs' Marks have been widely advertised and offered for sale throughout the United States via at least one fully interactive commercial Internet website or Internet marketplace website.

58.     Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of at least one of Plaintiffs' Marks are virtually identical in appearance to Plaintiffs' respective genuine goods. Accordingly, Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

59.     Defendants have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to

19

Plaintiffs' detriment.

60.     Defendants have authorized infringing uses of one or more of Plaintiffs' Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

61.     Additionally, Defendants are using counterfeits and infringements of one or more of Plaintiffs' Marks in order to unfairly compete with Plaintiffs and others for space within organic search engine results, thereby depriving Plaintiffs of a valuable marketing and educational tool which would otherwise be available to Plaintiffs and reducing the visibility of Plaintiffs' respective, genuine goods on the World Wide Web and across social media platforms.

62.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

63.     Plaintiffs have no adequate remedy at law and have sustained indivisible injury and damage caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiffs will continue to suffer irreparable injury to their goodwill and business reputation, as well as monetary damages.

## COUNT III - COMMON LAW UNFAIR COMPETITION.

64.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 48 above.

65.     This is an action against Defendants based on their promotion, advertisement, distribution, sale and/or offering for sale of goods using or bearing marks that are virtually identical to Plaintiffs' Marks in violation of Florida's common law of unfair competition.

66.     Specifically, Defendants are promoting and otherwise advertising, selling, offering

for sale and distributing goods bearing or using counterfeits and infringements of one or more of Plaintiffs' Marks. Defendants are also using counterfeits and infringements of one or more of Plaintiffs' Marks to unfairly compete with Plaintiffs and others for (i) space in search engine results across an array of search terms and (ii) visibility on the World Wide Web.

67.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' products by their use of Plaintiffs' Marks.

68.     Plaintiffs have no adequate remedy at law and are suffering irreparable injury and damages as a result of Defendants' actions.

## <u>COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT</u>

69.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 48 above.

70.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing at least one or more of Plaintiffs' Marks.  Plaintiffs are the respective owners of all common law rights in and to Plaintiffs' Marks.

71.     Specifically, Defendants are manufacturing, promoting, and otherwise advertising, distributing, offering for sale, and selling goods using and bearing infringements of at least one or more of Plaintiffs' Marks.

72.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing Plaintiffs' Marks.

73.     Plaintiffs have no adequate remedy at law and are suffering damages and irreparable injury as a result of Defendants' actions.

**PRAYER FOR RELIEF**

74.     WHEREFORE, Plaintiffs demand judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.     Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting Plaintiffs' Marks; from using Plaintiffs' Marks, or any mark or trade dress similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or trade dress that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiffs; from falsely representing themselves as being connected with Plaintiffs, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants, are in any way endorsed by, approved by, and/or associated with Plaintiffs; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of Plaintiffs Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiffs, or in any way endorsed by Plaintiffs and from

offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiffs respective name or trademarks and from otherwise unfairly competing with Plaintiffs.

       b.      Entry of a temporary restraining order, as well as preliminary and permanent injunctions, pursuant to 28 U.S.C. § 1651(a), The All Writs Act, enjoining Defendants and all third parties with actual notice of the injunction from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks.

       c.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that upon Plaintiffs' request, the top level domain (TLD) Registry for the Subject Domain Name and its administrators, including backend registry operators or administrators, place the Subject Domain Name on Registry Hold status for the remainder of the registration period for any such domain name, thus removing it from the TLD zone files which link the Subject Domain Name, and any other domain names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of Plaintiffs' Marks, to the IP addresses where the associated websites are hosted.

       d.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority canceling for the life of the current registration or, at Plaintiffs' election, transferring the Subject Domain Name and any other domain names used by Defendants to engage in their counterfeiting of Plaintiffs' Marks at issue to Plaintiffs' control so they may no longer be used for illegal purposes.

e.     Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that upon Plaintiffs' request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction by this Court disable and/or cease facilitating access to the Seller IDs and any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of Plaintiffs' Marks.

f.     Entry of an order, pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that, upon Plaintiffs' request, any Internet marketplace website operators, administrators, registrar and/or top-level domain (TLD) Registry for the Subject Domain Name and Seller IDs who are provided with notice of an injunction issued by this Court identify any e-mail address known to be associated with Defendants' respective Subject Domain Name or Seller ID.

g.     Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that upon Plaintiffs' request, any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court permanently remove from the multiple platforms, which include, *inter alia,* a Direct platform, Group platform, Seller Product Management platform, Vendor Product Management platform, and Brand Registry platform, any and all listings and associated images of goods bearing counterfeits and/or infringements of Plaintiffs' Marks via the e-commerce stores operating under the Seller IDs, including but not limited to the listings and associated images identified by the "parent" and/or "child" Amazon Standard Identification Numbers ("ASIN") on Schedule "A" annexed hereto, and upon Plaintiffs' request, any other listings and images of goods bearing counterfeits and/or

infringements of Plaintiffs' Marks associated with any ASIN linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing counterfeits and/or infringements of Plaintiffs' Marks.

h.     Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that upon Plaintiffs' request, Defendants and any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court immediately cease fulfillment of and sequester all goods of each Defendant bearing one or more of Plaintiffs' Marks in its inventory, possession, custody, or control, and surrender those goods to Plaintiffs.

i.     Entry of an Order requiring Defendants to account to and pay Plaintiffs for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiffs be trebled, as provided for under 15 U.S.C. §1117, or, at Plaintiffs' election with respect to Count I, that Plaintiffs be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

j.     Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiffs' costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

k.     Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in

all financial accounts and/or sub-accounts used in connection with the Subject Domain Name and Seller IDs or other domain names, websites,  alias seller identification names and/or e-commerce store names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiffs in partial satisfaction of the monetary judgment entered herein.

    l.  Entry of an award of pre-judgment interest on the judgment amount.

    m.  Entry of an Order for any further relief as the Court may deem just and proper.

DATED: May 19, 2020.   Respectfully submitted,

         STEPHEN M. GAFFIGAN, P.A.

         By: **s/Stephen M. Gaffigan**
         Stephen M. Gaffigan (Fla. Bar No. 025844)
         Virgilio Gigante (Fla. Bar No. 082635)
         T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
         401 East Las Olas Blvd., Suite 130-453
         Ft. Lauderdale, Florida 33301
         Telephone: (954) 767-4819
         E-mail: Stephen@smgpa.net
         E-mail: Leo@smgpa.net
         E-mail: Raquel@smgpa.net

         Attorneys for Plaintiffs

**<u>SCHEDULE "A"</u>**

**[This page is the subject of Plaintiffs' Motion to File Under Seal.  As such, this page has been redacted in accordance with L.R. 5.4(b)(1)]**